UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD JEAN-BAPTISTE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   23-432 (RC) |
| | : | |
| v. | : | Re Document Nos.:   11, 13, 15 |
| | : | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### Granting Defendants' Motion to Dismiss; Denying Plaintiff's Motions for Entry of Default and Default Judgment

### I.  INTRODUCTION

Plaintiff Harold Jean-Baptiste ("Plaintiff"), proceeding *pro se*, filed the instant suit against the Department of Justice ("DOJ"); Merrick B. Garland, in his official capacity as Attorney General of the United States; the Federal Bureau of Investigation ("FBI"); Christopher Wray, in his official capacity as Director of the FBI; and the Civil Process Clerk for the United States Attorney's Office (collectively, "Defendants"), alleging various torts, violations of his rights under the Ninth Amendment; 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986; 18 U.S.C. § 242; 10 NYCRR § 405.7; and a general "lack [of] care of duty [sic]" and "cruel and human rights violations."  *See* Am. Compl. at 2, 17–18, ECF No. 2.  In his amended complaint,[1] Plaintiff alleges that, on two separate occasions, the FBI planned operations to surveil and poison

---

[1] Plaintiff docketed both a complaint, ECF No. 1, and an amended complaint, ECF No. 2, on February 16, 2023.  The amended complaint appears to contain a few extra details that are excluded from the initial complaint.  The differences between the documents are immaterial, but given that the amended complaint is *slightly* more comprehensive, the Court will refer to the amended complaint throughout this opinion.

him in violation of his civil rights.[2]  *See id.* at 6–10.  Defendants move to dismiss the amended complaint, arguing that the Court lacks jurisdiction over Plaintiff's claims and that Plaintiff fails to state a claim upon which relief can be granted.  Plaintiff opposes Defendants' motion to dismiss and has also moved for entry of default and default judgment against Defendants.  For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff's motions for entry of default and default judgment are denied.

## II.  BACKGROUND

### A.  Factual Background

On October 10, 2022, Plaintiff allegedly checked himself into Long Island Jewish Hospital in Valley Stream, New York, to receive emergency treatment for chest pain and increased blood pressure that began after he ate at a Dunkin' Donuts in Huntington, New York.  Am. Compl. at 5.  Plaintiff claims that, upon being admitted to the hospital, he saw an unnamed "FBI Special Agent . . . advise[] the Nurses and Doctors to provide [him] adverse treatment," after which he was discharged without explanation of his symptoms.  *Id.* at 6.  Plaintiff had apparently eaten at the same Dunkin' Donuts two days prior without issue, and he believed that FBI agents' alleged presence at the hospital was indicative of their "target[ing]" and "complicity with the allegations."  *Id.*  According to Plaintiff, members of the hospital staff were aware of the

---

[2] The Court is familiar with Plaintiff's history of filing similar actions.  *See, e.g.*, Order, *Jean-Baptiste v. U.S. Dep't of Just.*, No. 21-cv-2221 (D.D.C. Aug. 17, 2021), ECF No. 25 (dismissing Plaintiff's claims that the FBI conspired to kidnap him in a van and administer a COVID vaccine designed to give him a heart attack); Order at 4, *Jean-Baptiste v. U.S. Dep't of Just.*, No. 22-cv-0897 (D.D.C. Mar. 29, 2022), ECF No. 8 (dismissing for lack of subject-matter jurisdiction because Plaintiff's claims that the FBI conspired to kidnap and kill him were "patently frivolous"); *Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-1054, 2023 WL 3736770, at *1–2 (D.D.C. May 31, 2023) (dismissing Plaintiff's allegations that the FBI directed a Pep Boys manager to kill him for lack of subject matter jurisdiction and "patent insubstantiality").

FBI agents' presence in the hospital, and he claims that "some Nurses and administration staff informed [him]" that the agents were "targeting him." *Id.*

The following day, Plaintiff claims to have experienced recurring symptoms "despite not eating anything for 24 hours and . . . drinking a gallon of water," and returned to the hospital for additional treatment. *Id.* at 7. When the hospital "refused to . . . tell [him] what treatment was provided," Plaintiff came to the conclusion that the FBI poisoned him because "[o]nly the FBI would have [access to] such [a] toxic substance." *Id.* After leaving the hospital, Plaintiff asserts that FBI agents "troll[ed]" him while he was waiting to be picked up by his brother. *Id.* Plaintiff attributes this alleged "attempt on [his] life" to a retaliatory effort against Plaintiff for "filing many lawsuits and 'Color of Law' complaints [against] the DOJ." *Id.* at 8.

Plaintiff further claims that, on February 11, 2023, he checked himself into the hospital to receive treatment for similar ailments that began after he ate at Key Food Supermarket in Valley Stream, New York. *Id.* at 8–9. Plaintiff alleges that the "emergency nurse" at the hospital told him that he "definitely [had] symptoms of someone who [had] been poison[ed]." *Id.* at 9. Plaintiff also claims that he saw an "FBI Special Agent" at the hospital texting another agent, both of whom Plaintiff believed were planning to execute a "sophisticated [assassination] attempt" against him.[3] *Id.* at 10.

---

[3] The rest of Plaintiff's amended complaint includes several pages of incoherent attacks on the supposed FBI agent. *See* Am. Compl. at 10–15 (claiming that "calling this FBI Special Agent In Charge an animal would be an insult to the animal kingdom," and describing the agent as a "malevolent sadistic psychopath (Lucifer's Son)" who "used all avenues to destroy the plaintiff's life").

3

### B. Procedural Background

Plaintiff filed suit in federal court on February 16, 2023.[4] In his amended complaint, Plaintiff alleges that Defendants subjected him to "cruel, inhuman, [and] oppressive" treatment in violation of his "Human Rights to be free," the Ninth Amendment, and 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986, Am. Compl. at 17–18; that Defendants conspired to deprive him of his "rights under Color of Law," in violation of 18 U.S.C. § 242, *id.*; and that Defendants were negligent, in violation of 10 NYCRR § 405.7 and their general "Care of Duty," *id.* at 15, 18. Plaintiff appears to seek declaratory and injunctive relief, as well as $330,000,000 in punitive damages. *Id.* at 18–20.

Defendants move to dismiss the amended complaint. *See generally* Defs.' Mem. P&A Supp. Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 11. In their motion, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims. *Id.* at 5–10. Defendants also argue that because all claims brought against them are "wholly incredible, frivolous, and incoherent," *see id.* at 4–7, and because several claims do not confer causes of action against Defendants, *see id.* at 10–11, Plaintiff fails to state any claim upon which relief can be granted, *see id.* at 4. In response, Plaintiff contends that his case should be allowed to proceed to discovery in light of the public interest of full judicial review. *See* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 2–5, ECF No. 14. Plaintiff separately moves for entry of default and default judgment, arguing that Defendants "did not appear as instructed by the Court and Fed. R.

---

[4] Plaintiff was recently "enjoined from filing any pro se complaint in the United States District Court for the District of Columbia without first obtaining leave to file upon a showing that the complaint raises new, non-frivolous matters that have not been previously adjudicated." Order at 3, *Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-2298 (D.D.C. Jan. 18, 2024), ECF No. 18. Plaintiff has repeatedly filed "frivolous or harassing" complaints, including "at least 47 separate lawsuits against the federal government." *Id.* at 2.

4

Civ. P. 55(d)." *See* Pl.'s Mot. Def. J. ("Pl.'s Mot.") at 4, ECF No. 15; Pl.'s Mot. Entry Default, ECF No. 13.

### III. LEGAL STANDARD

#### A. Subject Matter Jurisdiction

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)). The plaintiff bears the burden of establishing the court's subject matter jurisdiction. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When considering jurisdictional questions under Rule 12(b)(1), the court must accept as true all material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may also "cull additional facts from other parts of the record." *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017). "While complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers," *pro se* plaintiffs still bear "the burden of establishing that the [c]ourt has subject matter jurisdiction." *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (citations omitted).

In limited circumstances, "a court may dismiss a case . . . for lack of subject matter jurisdiction if a complaint is 'patently insubstantial' and thus 'presents no federal question suitable for decision.'" *Yi Tai Shao v. Roberts*, No. 18-cv-1233, 2019 WL 249855, at *15 (D.D.C. Jan. 17, 2019) (cleaned up) (quoting *Vasaturo v. Peterka*, 203 F. Supp. 3d 42, 44

(D.D.C. 2016)). "Declining to hear a claim because it is patently insubstantial is 'reserved for complaints resting on truly fanciful *factual* allegations,' while '*legally* deficient complaints' are still reserved for 12(b)(6) dismissals." *Id.* (quoting *Vasaturo*, 203 F. Supp. 3d at 44). To meet this standard, "claims must be flimsier than doubtful or questionable—they must be essentially fictitious." *Id.* (cleaned up) (quoting *Vasaturo*, 203 F. Supp. 3d at 44). "'[E]ssentially fictitious' claims include 'bizarre conspiracy theories, any fantastic government manipulations of [the] will or mind, [and] any sort of supernatural intervention.'" *Id.* (quoting *Vasaturo*, 203 F. Supp. 3d at 44).

### B. Failure to State a Claim

A plaintiff must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal alteration omitted). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" by determining whether the plaintiff has appropriately stated a claim for which relief can be granted. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Twombly*, 550 U.S. at 555, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to

dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor is a court required to presume the veracity of legal conclusions that are expressed as factual allegations, *see Twombly*, 550 U.S. at 555.

"In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Mindful that a *pro se* litigant's complaint should be "construed liberally and . . . held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)), a court will, when necessary, "examine other pleadings to understand the nature and basis of" a plaintiff's *pro se* claims, *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). Nevertheless, a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79).

## IV.  ANALYSIS

Plaintiff contends that the FBI planned operations to surveil and poison him, alleging various torts and violations of his civil rights. *See* Am. Compl. at 5–10, 13–18. Defendants argue that the Court lacks subject matter jurisdiction, *see* Defs.' Mot. at 5–7, and that Plaintiff fails to state plausible claims for relief, *see id.* at 4–7. The Court will address these arguments before turning to Plaintiff's motions for entry of default and default judgment.

### A. The Court Lacks Subject Matter Jurisdiction

Even applying the more lenient standard and liberal construction afforded to *pro se* litigants, *see Lemon*, 270 F. Supp. 3d at 133, Plaintiff fails to establish that the Court has subject matter jurisdiction over his claims. For one thing, the doctrine of sovereign immunity bars the Court from hearing Plaintiff's 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 claims. And second, Plaintiff's claims are unsubstantiated and clearly fanciful.

#### 1. The United States Has Not Waived Its Sovereign Immunity

Plaintiff alleges that FBI Agents subjected him to "cruel and violation [sic] of Human Rights" in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. Am. Compl. at 17–18. Defendants contend that Plaintiff's claims under these statutes are barred because the United States has not waived its sovereign immunity. *See* Defs.' Mot. at 7. The Court agrees with Defendants.

It is well-established "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). As relevant here, the United States's sovereign immunity extends to federal "agencies such as the DOJ and to [federal] employees where such employees are sued in their official capacities." *Harris v. Holder*, 885 F. Supp. 2d 390, 397 (D.D.C. 2012) ("[A]bsent a waiver of sovereign immunity, the court lacks subject matter jurisdiction to entertain plaintiff's claims for money damages against the FBI, the DOJ, or against the federal government officials sued in their official capacities."). "A waiver of the United States's sovereign immunity must be unequivocally expressed in statutory text." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005); *see also United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992).

There is nothing in the text of Sections 1981, 1983, 1985(3), or 1986 that suggests the United States has waived its immunity to suit under these statutes. In fact, courts have expressly

8

held the opposite.  First, take Section 1981.  Section 1981 states that all persons in the United States shall have "the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws."  42 U.S.C. § 1981(a).  The statute does not, however, contain "any language . . . indicating that [it] authorizes suits against the federal government or its employees."  *Prince v. Rice*, 453 F. Supp. 2d 14, 26 (D.D.C. 2006).  The upshot is that "the United States has not waived its immunity under § 1981, and the [C]ourt lacks jurisdiction over [Plaintiff's] claims against [Defendants] brought under § 1981.[5]  *See Strong-Fisher v. LaHood*, 611 F. Supp. 2d 49, 53 (D.D.C. 2009).

The same is true of Section 1983.  Section 1983 prescribes a cause of action for "any citizen of the United States or other person within the jurisdiction" who has been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  42 U.S.C. § 1983.  This Court has previously explained that "[Section] 1983 . . . does not contain a provision that waives the United States' sovereign immunity."  *Stone v. U.S. Embassy Tokyo*, No. 19-cv-3273, 2020 WL 4260711, at *6 (D.D.C. July 24, 2020); *see also Settles*, 429 F.3d at 1105.  Thus, the Court lacks jurisdiction over Plaintiff's Section 1983 claim.[6]

---

[5] In addition to this jurisdictional defect, Section 1981—by its plain text—only applies to actions taken "under color of *State* law."  42 U.S.C. § 1981(c) (emphasis added).  That being so, the statute "does not cover alleged actions of federal officials acting in their official capacities" because such actions are taken under color of *federal* law.  *See Strong-Fisher v. LaHood*, 611 F. Supp. 2d 49, 53 (D.D.C. 2009); *see also Davis v. U.S. Dep't of Just.*, 204 F.3d 723, 725 (7th Cir. 2000) (per curiam) ("[B]y its language, § 1981 does not apply to actions taken under color of federal law.").

[6] Like Section 1981, Section 1983 also "applies only to those acting under color of state law."  *Faller v. U.S. Dep't of Just.*, No. 20-cv-1597, 2021 WL 4243384, at *7 (D.D.C. Sept. 17, 2021).  It therefore "cannot be the basis for an action against the federal government or a federal official."  *Id.*; *see also Settles*, 429 F.3d at 1104 ("Section 1983 does not apply to federal officials acting under color of federal law.").

Finally, Section 1985(3) provides a cause of action against "two or more persons who participate in a conspiracy motivated by class-based discriminatory animus." *Atherton*, 567 F.3d at 688; *see* 42 U.S.C. § 1985(3). Section 1986 imposes civil liability on anyone who knows of a violation of the type "mentioned in section 1985" but fails to prevent the violation. 42 U.S.C. § 1986. But as many previous courts have explained, neither statute includes a waiver of the United States's sovereign immunity. *See Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017) ("'[Section] 1985 does not waive the federal government's sovereign immunity, so federal employees acting in their official capacities are immune from liability for alleged violations of § 1985,' and any other provision of the Civil Rights Act." (quoting *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006))); *Davis v. U.S. Dep't of Just.*, 204 F.3d 723, 726 (7th Cir. 2000) (per curiam) ("Sovereign immunity, however, bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity.").

### 2. Plaintiff's Claims Are Patently Insubstantial

Defendants further contend that Plaintiff's amended complaint can "only be described as baseless and frivolous," Defs.' Mot. at 5, and that Plaintiff's allegations "'constitute the sort of patently insubstantial claims dismissed' frequently in similar cases," *id.* at 6 (quoting *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009)). The Court agrees.

Federal courts are "without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)). Though seldom used, "a court can invoke Rule 12(b)(1) to dismiss a plaintiff's complaint that is 'patently insubstantial, presenting no federal question suitable for decision.'" *Walsh v. Comey*, 118 F. Supp. 3d 22, 25 (D.D.C. 2015) (cleaned up) (quoting *Best v. Kelly*, 39

F.3d 328, 330 (D.C. Cir. 1994)).  Such "essentially fictitious" claims include "bizarre conspiracy theories" and "any fantastic government manipulations."  *Best*, 39 F.3d at 330.

Here, Plaintiff's allegations that the FBI executed a plot to surveil and poison him are "similar to those in a number of cases that district courts have dismissed for patent insubstantiality."  *See Tooley*, 586 F.3d at 1010.  Plaintiff claims that he would be able to prove each of his assertions about the FBI's supposed plot "to hurt [his] life and make [his] children fatherless."  Am. Compl. at 13–14.  Plaintiff further contends that his "complaint before the Court has multiple witnesses, metadata data [sic] and video to support all allegations for the Court to review."  Pl.'s Opp'n at 2.  But these bare assertions—even along with Plaintiff's assurance that his allegations are "100% factual," Am. Compl. at 13—can be characterized as nothing else but "flimsier than doubtful or questionable."  *See Walsh*, 118 F. Supp. 3d at 25 (cleaned up).  The exhibits attached to Plaintiff's amended complaint—photographs of a person Plaintiff claims to be an FBI agent, a hospital receptionist, and the inside of Key Food Supermarket—do not alter that result.[7]  *See* Am. Compl. at 12–13.  In short, Plaintiff's attenuated and unsubstantial accusations of surveillance and harassment are akin to those "deriv[ed] from uncertain origins" that have been dismissed by this Court and others for patent insubstantiality.  *See Tooley*, 586 F.3d at 1010; *see also Lewis v. Bayh*, 577 F. Supp. 2d 47, 54–55 (D.D.C. 2008).  The Court therefore lacks subject matter jurisdiction over Plaintiff's claims.

### B.  Plaintiff Fails to State a Plausible Claim for Relief

Defendants also contend that Plaintiff "fails to state a plausible claim."  Defs.' Mot. at 4.  They argue that Plaintiff's claims are purely speculative and that a number of the constitutional,

---

[7] Plaintiff attempts to substantiate his exhibits by inserting text boxes explaining that certain hospital receptionists and a camera inside the Key Food Supermarket "can identify the FBI special agent."  Am. Compl. at 12–13.

statutory, and other legal theories Plaintiff invokes do not confer a cause of action. *See id.* at 4–11.

### 1. Plaintiff's Speculative Allegations Are Insufficient to Withstand a Motion to Dismiss

As explained above, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). But no matter how liberally it is construed, *see Lemon*, 270 F. Supp. 3d at 133, Plaintiff's amended complaint fails that test. Indeed, by his own account, Plaintiff's belief that the FBI sought to poison him is entirely speculative. Plaintiff's stated reasoning for believing that the FBI was plotting to poison him is his unsupported allegation that "[o]nly the FBI would have [access to] such [a] toxic substance" as the one apparently administered to him at Dunkin' Donuts. *See* Am. Compl. at 7. And the only factual support Plaintiff offers to show the FBI's "sophisticated [assassination] attempt" is his baseless assertion that he saw an alleged agent texting another agent in the lobby of the hospital. *See id.* at 10. To be sure, he also claims that an "emergency nurse" at the hospital told him that he "definitely [had] symptoms of someone who [had] been poison[ed]." *Id.* at 9. But these bare assertions—without more—do not permit the Court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Because Plaintiff has not pled any factual content that would "allow[] the [C]ourt to draw the reasonable inference that the defendant is liable," Plaintiff fails to state a claim for relief as it pertains to all alleged violations. *See Church of Jesus Christ of Latter-Day Saints v. Trump*, No. 18-cv-2820, 2019 WL 11769175, at *2 (D.D.C. May 6, 2019) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678), *aff'd sub nom. Xiu Jian Sun v. Trump*, No. 19-5197, 2020 WL 873534 (D.C. Cir. Feb. 14, 2020).

## 2. The Ninth Amendment, the New York Statute, and Plaintiff's Remaining Allegations Do Not Confer Causes of Action Against Defendants

Even if Plaintiff succeeded in pleading sufficient factual matter to state a plausible claim for relief, Plaintiff's alleged violations of the Ninth Amendment, 10 NYCRR § 405.7, 18 U.S.C. § 242, general "lack care of duty [sic]," and "cruel and human rights" do not confer viable causes of action.  *See* Am. Compl. at 2.  This provides an additional basis on which to dismiss a number of Plaintiff's claims.

First, the Ninth Amendment provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  "Courts in this district have repeatedly concluded that the Ninth Amendment is a rule of construction, not a substantive basis for a civil rights claim."  *Patterson v. Harris*, No. 21-cv-3339, 2023 WL 346096, at *10 (D.D.C. Jan. 20, 2023) (cleaned up) (quoting *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 26 (D.D.C. 2006)).  Accordingly, Plaintiff has failed to state a claim under the Ninth Amendment.

Second, 18 U.S.C. § 242 is a criminal statute "that provides no basis for an individual to bring a private, civil action."  *Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 32 (D.D.C. 2006); *see also Crosby v. Catret*, 308 F. App'x 453, 453 (D.C. Cir. 2009) (per curiam) ("The district court properly rejected appellant's attempt to invoke . . . 18 U.S.C. § 242 to initiate a prosecution against the named defendants because there is no private right of action under [this] criminal statute[].");  *Johnson v. D.C. Crim. Just. Act*, 305 F. App'x 662 (D.C. Cir. 2008) (same).  That means that Plaintiff is "precluded from asserting any claims pursuant to" 18 U.S.C. § 242.  *See Rockefeller v. U.S. Ct. of Appeals Off., for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).

Third, 10 NYCRR § 405.7 prescribes a standard of care to certain New York hospitals and does not appear to give rise to an independent private right of action against the United States.  *See* 10 NYCRR § 405.7 (outlining the generally accepted standards of professional medical practice and establishing certain patient rights when interacting with a hospital within the State of New York); *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 98-cv-2416, 2002 WL 13222, at *8 (E.D.N.Y. Jan. 3, 2002) (explaining that "a private cause of action based on a violation of § 405.7 has not been recognized").  Thus, Plaintiff fails to state a claim under 10 NYCRR § 405.7.

Finally, Plaintiff's general "lack care of duty [sic]" and "cruel and human rights violations" claims fail because Plaintiff does not identify any substantive legal basis for liability, thereby failing to "give [Defendants] fair notice of what the claim[s] [are] and the grounds upon which [they] rest[]."  *See Twombly*, 550 U.S. at 545 (internal alteration omitted).

### C.  Plaintiff Is Not Entitled to Default Judgment

Plaintiff argues that because Defendants "did not appear as instructed by the Court and Fed. R. Civ. P. 55(d)," he is entitled to default judgment.  Pl.'s Mot. at 4 (emphasis omitted).  This argument fails for multiple reasons.

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment where a defendant "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The record demonstrates, however, that Defendants timely filed their motion to dismiss by the ordered date of June 27, 2023, *see* Defs.' Mot.; *see also* Minute Order, *Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-432 (D.D.C. Apr. 25, 2023), and therefore did not fail to "plead or otherwise defend," Fed. R. Civ. P. 55(a); *see Peavy v. Holder*, No. 09-cv-5389, 2010 WL 3155823, at *1 (D.C. Cir. Aug. 9, 2010) ("[B]ecause the defendants timely filed a motion to

14

dismiss appellant's complaint, the district court properly denied appellant's motion for default judgment.").

Second, a default judgment may only be entered against the "United States, its officers, or its agencies . . . if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). But as explained above, Plaintiff has not established that the Court has subject matter jurisdiction over his claims in the first place. *See Strong-Fisher*, 611 F. Supp. 2d at 52 n.2 (denying plaintiff's motion for default judgment because she failed to establish subject matter jurisdiction over her claims and therefore failed to carry her burden under Rule 55(d)); *Campaign Legal Ctr. v. FEC*, 578 F. Supp. 3d 1, 7 (D.D.C. 2021) (denying plaintiffs' default judgment motion because the court determined that the plaintiffs did not have standing). That being so, Plaintiff has necessarily failed to carry his burden of establishing "a claim or right to relief by evidence that satisfies the court" as required by Rule 55(d). *See* Fed. R. Civ. P. 55(d). Accordingly, Plaintiff's motions for entry of default and default judgment must be denied.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 11) is **GRANTED**, and Plaintiff's motions for entry of default (ECF No. 13) and default judgment (ECF No. 15) are **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 25, 2024                                            RUDOLPH CONTRERAS
                                                                  United States District Judge